In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2801

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRUCE SONNENBERG,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:08-cr-00159-jtm—**James T. Moody**, *Judge.*

ARGUED SEPTEMBER 14, 2010—DECIDED DECEMBER 8, 2010

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* We consolidated six appeals by members of a crack cocaine distribution conspiracy. All six pled guilty. Judge James T. Moody, sitting by designation in the Western District of Wisconsin, imposed sentences that were either within or, in one case, slightly below, the applicable Sentencing Guideline ranges. All six have appealed their sentences.

In a separate unpublished order issued today, we explain in detail why we reject all but one of the appel-

lants' arguments. To summarize, we find (a) that the district court acted well within its discretion in choosing to impose guideline sentences despite appellants' arguments that the court should treat the differences between crack cocaine and powder cocaine sentences as a reason to impose lower sentences; (b) that the district court gave appropriate individual consideration to each appellant's case and the applicable sentencing factors under 18 U.S.C. § 3553(a); and (c) that the district court provided a sufficient explanation of its thinking. We therefore affirm the sentences of all appellants except Bruce Sonnenberg on familiar grounds that do not require a published, precedential opinion.

Appellant Bruce Sonnenberg presents a different issue. He argues that the district court erred by treating him as a career offender under the sentencing guidelines. The decisive issue is whether a prior conviction of Sonnenberg under a now-repealed Minnesota law for "intra-familial sexual abuse" counts as a "crime of violence" for purposes of the career offender guideline. The district court followed our controlling precedents at the time it made its decision. As explained below, however, intervening developments have shown that we and the district court had applied the wrong methodology in answering the question. The Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), and our application of *Begay* in *United States v. McDonald*, 592 F.3d 808 (7th Cir. 2010), mean that Sonnenberg's Minnesota conviction does not qualify as a crime of violence within the meaning of U.S.S.G. § 4B1.1. We therefore remand for re-sentencing, though the district court is

free to consider the specific circumstances of Sonnen-berg's earlier crime in exercising its discretion under § 3553(a). See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

The parties agree that the district court correctly calculated Sonnenberg's offense level as 35, based upon the quantity of crack cocaine and his decision to plead guilty. Without a career offender enhancement under § 4B1.1, Sonnenberg fell within criminal history category V, with a guideline range of 262 to 327 months in prison. With a career offender enhancement, he fell within criminal history category VI, with a guideline range of 292 to 365 months. The district court imposed the career offender enhancement and sentenced Sonnenberg to 292 months, the bottom of the applicable range.[1]

To qualify as a career offender under § 4B1.1, a defendant must have at least two prior felony convictions for crimes of violence or controlled substance offenses. Sonnenberg has a 1994 conviction for delivery of marijuana that counts as one qualifying felony. The dispute is whether he has a second qualifying felony as a crime of violence. A "crime of violence" is defined in

---

[1] This was an unusual case in which the offense level for the crime of conviction was higher than the offense level for a career offender under § 4B1.1(b).

relevant part as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another," or a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

In 1985, Sonnenberg was convicted in Minnesota of committing First Degree Intrafamilial Sexual Abuse in violation of Minn. Stat. § 609.3641(1) (1963) (repealed in 1985). He pled guilty and was sentenced to 43 months in prison. The execution of the 43-month sentence was stayed, and he was sentenced to 15 years of probation and one year of jail. In July 1987, the probation and stay were revoked based on Sonnenberg's violation of probation conditions. The sentence was ordered fully executed.

In treating the 1985 conviction as a crime of violence, the district court relied on our decisions in *United States v. Martinez-Carillo*, 250 F.3d 1101, 1105-06 (7th Cir. 2001), and *United States v. Shannon*, 110 F.3d 382 (7th Cir. 1997) (en banc), which allowed a sentencing court to consider the facts of the particular case in deciding whether a sex offense against a child was a crime of violence under § 4B1.1.

After the district court made its decision in this case, however, we held in *United States v. McDonald* that *Shannon* had been abrogated by the Supreme Court's decision in *Begay*. In *Begay*, the Supreme Court interpreted the materially identical portion of the definition of a crime of violence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and adopted the so-called "categorical" approach to classifying prior crimes as crimes of violence. Under the categorical approach of *Begay*, the

focus is not on the facts of the defendant's particular crime, but only on the fact of conviction and the essential elements of the offense. *Begay* also held that the residual clause for conduct that presents a serious potential risk of physical injury applies only to crimes that categorically involve "purposeful, violent, and aggressive conduct." 553 U.S. at 144-45 (holding that driving under influence of alcohol was not a crime of violence despite risks of physical injury to others). Under the categorical approach of *Begay*, therefore, a conviction can qualify as a crime of violence under the Armed Career Criminal Act only when (1) a violation of a particular statute would necessarily include as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) would, in the ordinary or typical case, present a serious risk of physical injury as a result of purposeful, violent, or aggressive conduct similar in kind and risk to the crimes enumerated in U.S.S.G. § 4B1.2(a)(2). See *McDonald*, 592 F.3d at 814-15; *United States v. Dismuke*, 593 F.3d 582, 591 (7th Cir. 2010).

*The Elements Clause*: We turn first to the specific elements of the crime of conviction. The repealed Minnesota statute provided in relevant part:

> A person is guilty of intrafamilial sexual abuse in the first degree if:

> (1) He has a familial relationship to and engages in sexual penetration with a child.

Minn. Stat. § 609.3641(1) (1963). Other provisions of the statute added various aggravating factors, such as force,

coercion, use of a weapon, or personal injury, but the parties do not suggest that any of these were applied to Sonnenberg. Therefore we limit our analysis to the core offense in the quoted subsection (1), without the other aggravators.[2] Under the statute, a "child" is defined as any person under age 16. Minn. Stat. § 609.364, Subdivi-

---

[2] The 1985 conviction was for a violation of Minn. Stat. § 609.3641 (1963), which provided in full:

A person is guilty of intrafamilial sexual abuse in the first degree if:

(1) He has a familial relationship to and engages in sexual penetration with a child; or

(2) He has a familial relationship to and engages in sexual penetration with a child and:

(a) the actor or an accomplice used force or coercion to accomplish the penetration;

(b) the actor or an accomplice was armed with a dangerous weapon or any article used or fashioned in a manner to lead the complainant to reasonably believe it could be a dangerous weapon and used or threatened to use the dangerous weapon;

(c) circumstances existed at the time of the act to cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another;

(d) the complainant suffered personal injury; or

(e) the intrafamilial sexual abuse involved multiple acts committed over an extended period of time.

sion 3. A familial relationship includes situations in which the actor is both a family member of the victim and those in which the actor is "an adult who jointly resides intermittently or regularly in the same dwelling as the complainant and who is not the complainant's spouse." Minn. Stat. § 609.364, Subdivision 9.

The government argues that the Minnesota statute, on its face, satisfies the first clause, or the elements test, for a crime of violence. We disagree. The first clause of the crime of violence definition does not apply here because the statute on its face does not require as an element "the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). Nothing in the Minnesota statute requires proof of physical force against another. See *McDonald*, 592 F.3d at 812 n.1 ("'use of force' element for purposes of § 4B1.2(a)(1) means the *intentional* use of force"), citing *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995) (abrogated on other grounds). In response to any suggestion that physical force is inherent in the crime, note that the Minnesota statute may be violated by consensual sexual activity involving an eighteen-year-old adult residing intermittently in the home and a minor the day before her or his sixteenth birthday.

*The Residual Clause*: We turn to the second clause of the definition of a crime of violence, the "residual clause," for conduct that presents a serious potential risk of physical injury. As the Supreme Court requires under *Begay*, we may not use the case-specific approach of our earlier cases such as *Shannon*, and must use instead a categorical

approach. We must "consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay*, 553 U.S. at 141; accord, *United States v. Woods*, 576 F.3d 400, 403-04 (7th Cir. 2009), citing *James v. United States*, 550 U.S. 192 (2007).

We first consider whether the statute categorically involves purposeful, violent, and aggressive conduct, as required by *Begay*. In *McDonald*, we held that a similar Wisconsin criminal sexual assault statute was not categorically violent because the statute was not limited to *purposeful* conduct. The Wisconsin statute stated: "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony." Wis. Stat. § 948.02(2). The Wisconsin courts treated the statute as a strict liability offense because no mental state was required regarding the victim's age. *McDonald*, 592 F.3d at 814, citing *State v. Lackershire*, 734 N.W.2d 23, 31 (Wis. 2007), and *State v. Jadowski*, 680 N.W.2d 810, 816, 822 (Wis. 2004). We said in *McDonald* that the purposeful requirement in *Begay* had "removed strict-liability crimes from the reach of the residual clause." 592 F.3d at 814.

Turning to the Minnesota statute at issue here, the Minnesota Court of Appeals has held that statutes without an intent element create general intent crimes rather than strict liability crimes. See *State v. Hart*, 477 N.W.2d 732, 736 (Minn. App. 1992) (holding that an absence of an intent element in Minnesota's criminal sexual conduct

statute creates not a strict liability crime but a general intent crime). On that basis, one might argue that we should distinguish the Minnesota statute from our holding in *McDonald*, and find that a conviction under § 609.3641(1) required purposeful conduct.

But even if we construed the statute as requiring purposeful conduct, we could not say that a violation of § 609.3641(1) categorically or typically involves "violent and aggressive conduct" of a nature similar to burglary of a dwelling, arson, extortion, or crimes involving the use of explosives, the examples in § 4B1.2(a)(2). The proper inquiry is not whether every violation of the statute would be violent and aggressive but "whether the elements of the offense entail conduct that, in the ordinary case, presents a serious risk of potential injury to another*." United States v. Fife*, 624 F.3d 441, 448 (7th Cir. 2010), citing *James*, 550 U.S. at 208; *Dismuke*, 593 F.3d at 594 ("[T]he 'violent and aggressive' limitation requires only that a residual-clause predicate crime be characterized by aggressive conduct with a similar potential for violence and therefore injury as the enumerated offenses, not that it must 'insist on' or require a violent act."); see also *Woods*, 576 F.3d at 404 ("[A] crime must be categorized as one of violence even if, through some freak chance, the conduct did not turn out to be violent in an unusual case."). The requirement that we look to the "typical" or "ordinary" case is helpful in that it requires us to move beyond a purely theoretical approach to categorical examination of statutes. Instead, at least in the absence of detailed statistical information that is unlikely to be available, the best we can do is use

common sense and experience to determine the variety of crimes a statute would cover, and to decide whether, in the ordinary, typical case, a statute applies to conduct that is categorically violent or aggressive in ways similar to the examples in § 4B1.2(a)(2).

In *McDonald* we expressed doubt as to whether the Wisconsin statutory rape law "could qualify as categorically 'violent and aggressive' and therefore [be considered] similar in kind to the enumerated offenses in the residual clause," *McDonald*, 592 F.3d at 814, and we are persuaded by our sister circuits' interpretations of statutory rape laws that encompass conduct similar to conduct covered by the Minnesota statute. In *United States v. Thornton*, 554 F.3d 443, 449 (4th Cir. 2009), the Fourth Circuit held that a conviction under a Virginia statute was not a "violent felony" for purposes of the Armed Career Criminal Act: "Although nonforcible adult-minor sexual activity can present grave physical risks to minors, and although states are entitled to criminalize nonforcible adult-minor sexual activity to protect minor victims from these risks, such risks are not sufficiently 'similar, in kind as well as in degree of risk posed to the examples'" listed in § 4B1.2(a)(2). 554 F.3d at 449, quoting *Begay*, 553 U.S. at 143. Similarly, the Ninth Circuit found in *United States v. Christensen*, 559 F.3d 1092, 1095 (9th Cir. 2009) (internal citation omitted), that a Washington state felony was not a violent crime under *Begay* "because statutory rape may involve consensual sexual intercourse, it does not necessarily involve either 'violent' or 'aggressive' conduct." Similarly,

the Eleventh Circuit held in *United States v. Harris*, 608 F.3d 1222, 1233 (11th Cir. 2010), citing *Begay*, 553 U.S. at 144-45, that a conviction for sexual battery of a child under age sixteen did not constitute a crime of violence under the Armed Career Criminal Act's residual clause because the statute, viewed categorically, imposed strict liability and covered a broad range of conduct. The court concluded that it could not say that a violation of the statute "typically" involves "purposeful, 'violent,' and 'aggressive' conduct."

In contrast, the Second Circuit found that a Vermont statute making it a felony to engage in a sex act with a person under the age of 16 was a violent felony. See *United States v. Daye*, 571 F.3d 225, 234-35 (2d Cir. 2009) (emphasizing that *Begay* "does not require that *every* instance of a particular crime involve purposeful, violent, and aggressive conduct," but "[i]nstead, all that is required is that a crime, in a fashion similar to burglary, arson, extortion, or crimes involving the use of explosives, '*typically* involve[s] purposeful, violent, and aggressive conduct'" as do crimes that involve a sexual act with a minor in violation of the Virginia statute). Likewise, in *United States v. Rooks*, 556 F.3d 1145, 1150 (10th Cir. 2009), quoting *Begay*, 553 U.S. at 143, the Tenth Circuit found that "Sexual assault involving intentional penetration without consent is similar 'in kind as well as in degree of risk posed' to the [examples] set forth in § 4B1.2(a)'s commentary."

Unlike the narrower statutes at issue in *Daye* and *Rooks*, the Minnesota statute under which Sonnenberg was convicted did not take into consideration such factors

as consent or differences in age. Instead, as in *McDonald*, 592 F.3d at 815, the Minnesota statute swept broadly, applying to all acts of sexual penetration of a minor under the age of 16 by any adult with a "familial relationship." The sexual activity could be consensual, and the "familial relationship" element could be satisfied even by an entirely unrelated adult who merely resided in the same home as the child. We acknowledge that some, perhaps many, violations of the statute would include conduct and relationships that would fit the definition of a crime of violence (for example, with significant age differences, a very young child, and the use of force). But subsection (1) of the Minnesota statute, under which Sonnenberg was convicted, swept much more broadly to include as well sexual activity that could be consensual and non-violent under the standards of *Begay* and *McDonald*. For these reasons, the offense described in the Minnesota statute, "in the typical or ordinary case," would not meet *Begay*'s requirement of purposeful, aggressive, and violent conduct.

To avoid this result, the government also argues that the "modified categorical approach" should be applied. That approach may be applied under a recidivist enhancement where a statute specifies distinct modes of committing the prior offense. In that case, if the judgment of conviction does not specify exactly which provision was violated, a court considering a recidivist enhancement may consider certain additional materials, such as charging and plea documents, but only for the limited purpose of determining "under which part of a divisible statute the defendant was charged." *United States*

*v. Woods*, 576 F.3d 400, 406 (7th Cir. 2009). We are not persuaded by the government's argument that the Minnesota statute is divisible because it includes "separate modes of committing the offense" in its definition of "sexual penetration." Subsection (1) of the statute simply was not drafted so as to be divisible in that manner.

Following the approach in *McDonald*, we therefore conclude that a categorical approach is appropriate here, so that Sonnenberg does not qualify as a career offender under § 4B1.1. We must vacate his sentence and remand his case for re-sentencing without the career offender enhancement.

We recognize that the categorical approach can seem artificial and abstract, though it helps to narrow the scope of recidivist statutes or sentencing guidelines that can impose dramatic enhancements on sentences for those defendants who clearly fall within their intended scope. If we could still use a different method, as we did in *Shannon*, and could focus on the defendant's actual conduct, we might reach a different conclusion about the career offender enhancement for Sonnenberg. The record here indicates that his 1985 conviction was based on sexual intercourse with his stepdaughter twice a month for four years, from the time she was seven years old until she was eleven years old. A court could reasonably consider that particular course of criminal conduct as involving purposeful, forceful, and aggressive behavior posing a serious risk of physical injury to such a young victim. In any event, regardless of the final decision on the career offender enhancement, on

remand the district court will be able to consider all factors relevant under 18 U.S.C. § 3553(a), including the defendant's history and characteristics. Nothing in the law would require the court, in exercising its judgment and discretion under § 3553(a), to close its eyes to the actual conduct that led to the prior conviction. See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Finally, Sonnenberg also argues on appeal that his sentence, 82 months higher than any of the other named non-leader conspirators in the consolidated appeals, is an unreasonably high and disparate sentence, that the court should have considered the factors under 18 U.S.C. § 3553(a), and should have better explained its reasoning for the sentences it imposed. Sonnenberg specifically challenges the reasonableness of his sentence in light of what he argues was a limited role in the conspiracy—based on the fact that he was a "hard core crack addict" and not allowed "to handle the drugs or money from the [drug] transactions"—and was therefore entitled to a minor participant role reduction in his sentence. Sonnenberg's argument as to the reasonableness of his sentence based on the § 3553(a) factors is without merit. The district court explicitly addressed his argument for a lower sentence based on a mitigating role in the conspiracy. The court explained that it viewed Sonnenberg as "an average participant in this conspiracy" and that his role "included aiding his wife and transporting crack cocaine which

was obtained from a source in Minnesota and brought back to Wisconsin for distribution to his own people." In addition, the judge considered and discussed Sonnenberg's relationship with his wife, his prior convictions, his abuse of alcohol and drugs, and his neglect of his children in determining his sentence. To the extent that Sonnenberg raised other issues about his sentencing, our explanation of our affirmance of the other appellants' sentences in the unpublished order addresses them. The district court adequately considered the § 3553(a) factors.

Appellant Bruce Sonnenberg's sentence is VACATED, and his case is remanded for re-sentencing consistent with this opinion.